**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13–cv–02335–RM-KMT

UNITED FOOD AND COMMERCIAL WORKERS
INTERNATIONAL UNION, LOCAL NO. 7,

      Plaintiff,

v.

KING SOOPERS, INC.,

      Defendant.

---

## ORDER

---

    This matter arises from Plaintiff's complaint to compel arbitration pursuant to Article 43

under a collective bargaining agreement between the parties.  Now before the Court for

resolution are cross-motions for summary judgment: (1) Defendant's Motion for Summary

Judgment and Brief in Support (ECF No. 27); and (2) Plaintiff's Motion for Summary Judgment

(ECF No. 29).   Upon consideration of the motions, the court file, and the applicable rules,

statutes, and case law, and being otherwise fully advised, the Court DENIES Defendant's motion

and GRANTS Plaintiff's motion.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff and Defendant are signatories to a collective bargaining agreement (the

"Agreement") with a stated "Term" of May 10, 2009 through September 14, 2013.  Defendant

owns and operates approximately 145 stores with in-store pharmacies.  Three types of employees

work in the pharmacies – pharmacists, pharmacy technicians ("pharmacy techs"), and pharmacy

interns.  Pharmacy techs are a classification of workers covered under the Agreement.  Some, but not all, of the pharmacy techs are represented by Plaintiff.  All the work performed in the pharmacies is required to be performed under the license of the pharmacist on duty; therefore, the pharmacist is responsible for delegating tasks to pharmacy techs and pharmacy interns.  Among the tasks which pharmacists may delegate to pharmacy techs are entering prescription orders into the computer system; counting pills or pouring liquids into prescription bottles, referred to as "product dispensing" or "filling"; putting labels on prescription bottles; and handing out prescriptions to customers.

Beginning in 2011, some of Defendant's pharmacies began using Central Fill as a prescription medication vendor.  Defendant's pharmacists retain discretion to decide which prescriptions will be filled by Central Fill.  Central Fill employs, among others, pharmacists and pharmacy techs.  The "vast" or "large" majority of prescription orders received by Central Fill are filled through an automated process through the use of machines.  After the prescriptions are filled, they are delivered by a third-party delivery service to Defendant's stores.  Approximately 15% to 18% of Defendant's prescription orders are filled by Central Fill; the remaining prescriptions are filled by Defendant's pharmacists, pharmacy techs, and pharmacy interns.

Since 2011, Plaintiff has filed more than 100 grievances alleging that non-bargaining unit employees (here, Central Fill employees) are performing bargaining unit work.  Plaintiff's grievances allege that Defendant is violating the subcontracting clause (Article 2, Section 4) in the Agreement by subcontracting – to Central Fill employees – the work of filling prescriptions, and of transporting prescriptions to Defendant's stores.   Section 4 of the Agreement provides, in

relevant part, "[e]xcept for sanitation and floor maintenance, the Employer [Defendant] agrees not to subcontract operations existing within the stores…."

In this case, only four grievances are at issue.[1] Plaintiff demanded arbitration on these grievances, but Defendant will not arbitrate. When Defendant refused to arbitrate, Plaintiff filed this action to compel Defendant to arbitrate the four grievances. In response, Defendant filed a counterclaim alleging Plaintiff's grievances, demand to arbitrate the grievances, and lawsuit are unfair labor practices which violate the National Labor Relations Act ("NLRA"), entitling Defendant to relief under the Labor Management Relations Act ("LMRA"). Defendant is not facially challenging the Agreement or its provisions governing arbitration or the subcontracting clause. Instead, Defendant is challenging the Union's interpretation of the Agreement – arguing that the Union is trying to enforce an interpretation of the Agreement which violates the NLRA.

## II.   LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem. Coal Co., Inc.,* 41 F.3d 567, 569-70 (10th Cir. 1994). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion . . . ." *Robertson v. Bd. of Cty. Comm'rs of the Cty. of Morgan*, 78 F. Supp. 2d 1142, 1146 (D. Colo. 1999) (citation omitted). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient

---

[1] Plaintiff's papers indicate its grievances are limited to claiming work related to filling prescriptions by pharmacy techs, and not to other work, such as transporting the prescriptions. (ECF No. 34, page 10; ECF No. 33-4, page 2.) Disputes concerning the issues of the grievances are matters for the arbitrator to resolve. Likewise, disputes over the relationship between Kroger, King Soopers, and Central Fill are also matters for the arbitrator. *Cf., e.g.,* ECF No. 33-2, page 60 (Agreement signed by Mr. DiCroce for King Soopers in 2010) *with* ECF No. 39-3 (Affidavit of Mr. DiCroce stating he has been employed by Kroger since 2003, leaving King Soopers' employment at that time).

disagreement to require submission to a jury or is so one–sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the non-moving party to move beyond the pleadings and to designate evidence which demonstrates the existence of a genuine dispute of material fact to be resolved at trial. *See 1-800-Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. In considering whether summary judgment is appropriate, the facts must be considered in a light most favorable to the non-moving party. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013) (citations omitted).

If a movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact") (citation omitted). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the

4

movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

"[C]onclusory, self-serving, and generalized denials" are insufficient to defeat summary

judgment. *Sartori v. Susan C. Little & Associates, P.A.*, 571 F. App'x 677, 680 (10th Cir. 2014).

### III.   ANALYSIS

#### A.  The parties agreed to arbitrate the dispute

"[A]rbitration is a creature of contract[;] [therefore] a party cannot be forced to arbitrate

any issue he has not agreed to submit to arbitration." *Commc'ns Workers of Amer v. Avaya, Inc.*,

693 F.3d 1295, 1300 (10th Cir. 2012).  There is a presumption in favor of arbitration in labor

relations matters. *Id.*  Thus, a dispute under a collective bargaining agreement must be arbitrated

unless "'it may be said with positive assurance that the arbitration clause is not susceptible of an

interpretation that covers the asserted dispute.'" *Id.* (quoting *United Steel Workers v. Warrior &*

*Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).  The court determines as a threshold matter

whether the parties consented to submit a particular dispute to arbitration. *Id.; see also John*

*Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964).

Under Article 43 of the Agreement, the parties agreed that "[s]hould any dispute or

complaint arise over the interpretation or application of this Agreement," the parties are required

to engage in a two-step process and "may" engage in a third-step – arbitration.  At Step 3, a party

"may" request arbitration and, if requested, "the other party *shall* be obligated to proceed with

arbitration in the manner hereinafter provided [in the Agreement]."  (ECF No. 29-3, page 56

(emphasis added).) [2]  In this case, it is undisputed that Plaintiff invoked Step 3 with a demand for arbitration, and Defendant refused. [3]

The Court's review of the papers – which encompasses Defendant's counterclaim – shows Plaintiff and Defendant contracted to resolve the dispute at issue through arbitration. Here, the dispute includes[4] whether Defendant has transferred or subcontracted work away from pharmacy techs (employees in the bargaining units represented by Plaintiff) to non-unit employees, in contravention of Article 2, Section 4 (Defendant "agrees not to subcontract operations existing within the stores.") of the Agreement.  Plaintiff contends Defendant has violated Section 4, and filed the four grievances at issue.  Defendant argues it has not violated Section 4, alleging, for example, what Plaintiff seeks is work acquisition and not work preservation.  Accordingly, the Court finds in favor of Plaintiff on this issue – the parties' dispute is within the scope of the arbitration provision and subject to arbitration.

Defendant, however, argues arbitration may not be had because Plaintiff's interpretation of Section 4 is illegal – an unfair labor practice – and counterclaims alleging relief under the LMRA.  Defendant's refusal is not based on the assertion that the dispute is not within the scope of the arbitration provision.  Instead, Defendant's refusal is based on the contention that arbitration of the grievances – of the issue of whether the work in dispute is within the scope of Section 4 – violates the NLRA.  Hence, Defendant argues, arbitration must be denied.  As discussed below, the Court finds otherwise.

---

[2] The Court's references are to the page numbers assigned by CM/ECF upon the filing of a document.
[3] There is no assertion that Plaintiff did not comply with Steps 1 and 2 under the Agreement.
[4] Plaintiff indicates this is the only dispute.  Defendants contend Plaintiff disputes (or, until recently, disputed) more.

**B.  Arbitration must be compelled notwithstanding Defendant's contention that the demand for arbitration itself has an illegal objective**

 Defendant argues that Plaintiff – a union – may enforce a subcontracting provision only if it meets the two-part test of (1) work preservation – that the provision seeks to preserve existing work rather than to acquire new work, and (2) the "right of control" – that the employer had the right to control the assignment of the work at issue.  And, according to Defendant, when a union fails to meet these tests, the objective of the union's demand for arbitration is to secure an interpretation of the collective bargaining agreement ("CBA") that would violate the NLRA; therefore, it would be inappropriate for the Court to allow the arbitration to proceed.  (ECF No. 27, page 5.)  The Court finds otherwise.

Under the facts and circumstances of this case, the Court is not persuaded by the cases Defendant cites to support the relief it seeks, as none of them address the issue at hand.  In *Local 32B-32J, Serv. Employees Int'l Union v. NLRB*, 68 F.3d 490 (D.C. Cir. 1995), the court affirmed the National Labor Relations Board's ("NLRB") decision, which decision affirmed the ALJ's determination that the object of the union's arbitration demand was not work preservation; therefore, the union's resort to arbitration had an illegal objective because the interpretation that the union sought would necessarily violate the NLRA.  Accordingly, it was inappropriate to allow the arbitration (which had been halted pending the outcome of the NLRB proceeding) to proceed.  No discussion was had on whether the dispute could have been decided by the arbitrator.

Similarly, in *Durham School Servs., L.P. v. General Drivers, Warehousemen & Helpers,* 90 F. Supp. 3d 559 (D.S.C. 2015), although the CBA allowed the parties to submit their grievances to binding arbitration, the parties agreed to postpone arbitration pending the

resolution of the employer's action alleging the union violated the NLRA by pursuing an interpretation of the CBA that would render it unlawful.  The court found the union violated the NLRA by filing grievances in pursuit of an interpretation of the CBA that would render it unlawful.  Again, no discussion was had on whether the dispute could have been decided by the arbitrator.

In *Marrowbone Dev. Comp. v. District 17, United Mine Workers of Amer.*, 147 F.3d 296, (4th Cir. 1998), the employer and union submitted their dispute to the arbitrator as to whether the employer was using nonunion employees to do work in violation of the CBA.  The arbitrator held in favor of the union.  Thereafter, the employer filed an action with the district court to vacate the award arguing the CBA, as applied by the arbitrator, violated the NLRA and therefore was unenforceable.  The district court ruled that, as applied by the arbitrator, the contract did not violate the NLRA.  On appeal to the Fourth Circuit, that court reversed.  The court concluded that "when the arbitrator applied the national agreement to force [employer] to cease its relationship with its contractors…, it applied the agreement in a work-acquisitive manner." *Id.* at 304.  Although *Marrowbone* also does not address the issue before the Court, it lends support against Defendant's position as the arbitrator was allowed to decide the dispute.

 The same can be said of *American Pres. Lines, Ltd. v. Int'l Longshore & Warehouse Union*, 997 F. Supp. 2d 1037 (D. Alaska 2014), cited by the court in *Durham* upon which Defendant relies.  In *American Pres. Lines* the union filed a grievance, arbitration was held, and the arbitrator found in favor of the union.  The employer thereafter filed an unfair labor practice charge with the NLRB alleging the award violated the NLRA and the union violated the NLRA by pursuing an unlawful interpretation of the CBA, but the charge was dismissed.  The employer

then filed an action before the district court, arguing the union violated the NLRA based on the interpretation of the work preservation provision it advanced.  The district court concluded the interpretation advanced by the union was not clearly unlawful and there was no violation of the NLRA.  As in *Marrowbone*, the arbitrator determined the dispute in the first instance.

Thus, in summary, Defendant's cases do not resolve the issue of whether – when the parties agreed to arbitrate the dispute – the arbitrator should decide the dispute in the first instance.  Relying on an extension of the rationale of *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983), these cases are factually inapposite.[5]  Here, the Court has determined the parties' dispute is subject to arbitration; it also determines that the arbitrator should resolve the parties' dispute in the first instance.  The Court is persuaded by the analysis in *Road Sprinkler Fitters Local Union No. 669 v. Cosco Fire Protection, Inc.*, 363 F. Supp. 2d 1220 (C.D. Cal. 2005) as to the issue at hand.  There, the union filed a grievance and complaint for arbitration.  Among other things, the employer filed an unfair labor charge with the NLRB, alleging the union was attempting to apply the terms of the CBA in violation of the NLRA.  The employer defended against the complaint for arbitration by arguing, among other things, that the grievance was filed for the unlawful purpose of work acquisition in violation of the NLRA.  The court

---

[5] Even if the rationale of *Bill Johnson's* applies by analogy, arbitration is still required.  The Court interprets that case as supporting the proposition that another body (the NLRB) has authority to compel the cessation of "an improperly motivated suit lacking a reasonable basis" as a violation of the NLRA.  *Id.* at 744.  The NLRB or other body may not do so, however, "if there is a genuine issue of material fact that turns on the credibility of witnesses or on the proper inferences to be drawn from the undisputed facts." *Id.* at 744-5.  Where there are genuine factual issues, the NLRB may not usurp the fact-finding function of the fact-finder in the lawsuit.  *Id.* at 745.  Similarly, state-law legal issues should be addressed by the state-court.  *Id.* at 746-7.
   Here, even if the Court were to analogize *Bill Johnson's* as allowing this Court to compel the cessation of the parties' bargained for arbitration, it could not do so in light of the genuine factual issues, *see* n. 1, *supra*, and the differing inferences which may be drawn from the undisputed facts (*e.g.,* the Union's attempts to organize Central Fill on or about 2013 and thereafter).   Further, the parties have not discussed whether there are or are not any legal issues which should be addressed by an arbitrator.  Accordingly, on this record, as the Supreme Court stated, "the Board should allow such [factual and legal] issues to be decided by the state tribunals if there is any realistic chance that the plaintiff's legal theory might be adopted." *Id.* at 747.

rejected the employer's argument because: (1) the merits of a grievance are exclusively within the province of the arbitrator, citing to *United Steelworkers v. Amer. Mfg. Co.*, 363 U.S. 564, 568 (1960); (2) arbitration may be avoided on the grounds that a contract clause is illegal only if the clause on its face violates federal labor law, relying on *R.B. Elec., Inc. v. Local 569, Int'l Broth. of Elec. Workers*, 781 F.2d 1440, 1442 (9th Cir. 1986); and (3) arbitration may be compelled so long as an arbitrator could interpret the clause in a manner that would render it lawful. *Road Sprinkler Fitters,* 363 F. Supp. 2d at 1225. The Court agrees.

In this case, Section 4 is not, on its face, illegal and Defendant does not argue otherwise. *Cf. Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 86 (1982) ("[A] court may not enforce a *contract provision* which violates § 8(e)." (Emphasis added.) ). Instead, Defendant argues Plaintiff's attempted application (*i.e.,* interpretation) of the clause violates federal labor law. However, in this case, the question of Plaintiff's application of Section 4 – going to the merits of Plaintiff's grievances – should be determined by the arbitrator. And, finally, even assuming, *arguendo*, Plaintiff's interpretation may be illegal, the arbitrator could interpret Section 4 in a manner that would render it lawful, *e.g.*, against the interpretation requested by Plaintiff. *Local 1316, Int'l Brotherhood of Elec. Workers v. Superior Contractors & Assocs., Inc.*, 608 F. Supp. 1246, 1251 n.3 (N.D. Ga. 1985) ("Any claim that the plaintiff's suit compels illegality would be moot if the arbitrator were to rule against the union.") Accordingly, Defendant is required to arbitrate the parties' disputes. *See Local 1316,* 608 F. Supp. at 1251 (granting motion to compel arbitration as the court would not be enforcing the contract clause at issue but, rather, compelling arbitration of the enforceability issue).

**IV.     CONCLUSION**

Based on the foregoing, the Court **ORDERS**

(1)  That Plaintiff's Motion for Summary Judgment (ECF No. 29) is **GRANTED**;

(2)  That Defendant's Motion for Summary Judgment (ECF No. 27) is **DENIED**;

(3)  That Defendant shall **ARBITRATE** the grievances filed by Plaintiff;

(4)  That the Trial Preparation Conference set for May 6, 2016 and the jury trial set to

begin June 13, 2016 are hereby **VACATED**;

(5)  That Plaintiff is awarded its attorney's fees in accordance with the Agreement and

shall, within 14 days of the date of this Order, file a motion for attorney's fees in

accordance with Fed. R. Civ. P. 54 and D.C.COLO.LCivR 54.3;

(6)  That Plaintiff is awarded its costs and shall, within 14 days of the date of this Order,

file a bill of costs in accordance with the procedures under Fed. R. Civ. P. 54(d)(1)

and D.C.COLO.LCivR 54.1, which shall be taxed by the Clerk of the Court; and

(7)  That the Clerk of the Court shall enter **JUDGMENT** in favor of Plaintiff and against

Defendant.

DATED this 20th day of April, 2016.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge